# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| WENDELL D. BRITT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:13-cv-01795-WTL-DML |
| ) | |
| DR. RAHANA, and ) | |
| GARY TINGLE, Marion County Jail ) | |
| Commander, Lt. Col., ) | |
| ) | |
| Defendants. ) | |

**Entry Granting Defendants' Unopposed Motion for Summary Judgment**

Presently pending before the Court is the Motion for Summary Judgment filed by defendants Dr. Rohana and Jail Commander Gary Tingle on January 15, 2015. Despite an extension of time, no response was filed by the plaintiff Wendell D. Britt, and the deadline for doing so has passed.

In this lawsuit, Mr. Britt accuses Dr. Rohana and Mr. Tingle of being deliberately indifferent to his medical needs. Mr. Britt alleges that he was transferred from Wishard Hospital to the Marion County Jail with a punctured lung, broken ribs and a fractured right arm and toes. Dr. Rohana was allegedly responsible for treating him but refused to examine him and ignored his medical requests. Jail Commander Tingle allegedly knew that Mr. Britt was not receiving necessary treatment but failed to take any action to resolve this problem. See Dkt. 68 at 2-3.

For the reasons explained below, the defendants' unopposed motion for summary judgment [dkt. 77] is **granted.**

1

## Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380-81 (2007). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In this case, the defendants have met that burden through their unopposed motion for summary judgment. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). By not responding to the motion for summary judgment, Mr. Britt has conceded to the defendants' version of the facts. *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 286 (7th Cir. 1997). This is the result of Local Rule 56-1(f), of which Mr. Britt was notified. This does not alter the standard for assessing a Rule 56 motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

**Statement of Material Facts**

The following facts, unopposed by Mr. Britt and supported by admissible evidence are accepted as true:

On October 30, 2012, Mr. Britt was injured in a collision in Indianapolis in which he was a passenger in a truck he had stolen two days earlier. Mr. Britt, who was heavily intoxicated, was arrested and transported to Wishard Hospital. Once there, Mr. Britt received surgery for a hemothorax, and a tube was placed in his left chest. Mr. Britt was also given a CAT scan, which did not reveal any signs of a broken arm or broken toes.

A week later, on November 5, 2012, Mr. Britt was discharged from Wishard. A copy of Mr. Britt's discharge orders were faxed to the Marion County Jail 1 on November 5, and reviewed by Dr. Rohana that same date. Dr. Rohana is employed by Correct Care Solutions, LLC, and is the medical director at Marion County Jail 1. Mr. Britt's discharge orders provided the following summary for the hospital's course of treatment:

> 45 [year old] male s/p [motor vehicle crash] with left hemothorax. Patient was also intoxicated. Alcohol intervention was provided. He was maintained on alcohol withdrawal protocol and administered thiamine and folate. A chest tube was placed on the left with near complete resolution of hemothorax. Upon removal, chest xray post pull did not reveal any PTX. Patient discharged to prison being arrested in stable condition, pain controlled on oral meds, breathing comfortably on RA. Tolerating regular diet, having regular bowel movements.

"PTX" is medical shorthand for pneumothorax, and "RA" is a medical abbreviation for "room air," meaning that Britt was not on supplemental oxygen. The discharge orders further noted that Britt was on a regular diet, that he could exercise as tolerated, and that his discharge medications included bacitracin ointment, a stool softener, and Percocet (Oxycodone 5/Acetaminophen 325).

Based on his review of the discharge orders, as well as his own medical judgment, Dr. Rohana prescribed Mr. Britt with Vicodin and a stool softener—effectively providing the exact same types of medications as those prescribed at Wishard Hospital. Dr. Rohana ordered that Mr. Britt was to receive Vicodin three times a day ("tid") for three days; then twice a day ("bid") for three days; then once a day at bedtime ("qhs") for three days.

After being discharged from Wishard on November 5, Mr. Britt was taken to the Arrest Processing Center in Indianapolis. Near midnight the next day, November 6, Mr. Britt was booked into Marion County Jail 1. Mr. Britt was assigned to the medical block and given a lower bunk assignment. The following day, November 7, Mr. Britt was seen by Nurse Chassity Plummer-Long, a nurse employed by CCS. At that time, Nurse Plummer-Long provided Mr. Britt with a bandage change. Two days later, on November 9, Nurse Plummer-Long saw Mr. Britt a second time at the jail clinic. She prepared a progress report of her meeting with Mr. Britt:

> Patient seen in clinic for wound evaluation following discharge from Wishard on 11/8/12 [sic]. Patient had been a passenger in MVA and sustained hemothorax that was nearly completely resolved prior to release from Wishard per report. Noted moderate amount of bruising to [left] rib cage and [left] side of chest. Noted a 2 cm surgical incision from chest tube site, edges well approximated and scabbed [with] [no] active drainage noted[.] [[No signs] of infection present. Cleansed area [with] NaCl and applied dry gauze dressing to remain C/D/I until re-evaluation on 11/13/12[.] Patient verbalizes understanding. Patient educated to submit health request for any concerns prior to re-evaluation on 11/13/12. Patient verbalizes understanding.

Mr. Britt did not report any pain to Nurse Plummer-Long when he met with her. Dr. Rohana reviewed and approved Nurse Plummer- Long's report on November 9. Mr. Britt testified that it was appropriate for Dr. Rohana to rely on the reports of Nurse Plummer-Long, and that, based on those reports, Dr. Rohana would have had no knowledge of any pain experienced by him at that time.

4

On Tuesday, November 13, 2012, when he was no longer receiving Vicodin, Mr. Britt submitted a health service request stating: "I have broken ribs, punctured lung, I'm in pain. I need medication, please. Thank you." The next day, on November 14, Mr. Britt was seen by Nurse Plummer-Long and Dr. Rohana. At that time, Dr. Rohana asked Mr. Britt what he could do for him. Mr. Britt told Dr. Rohana that he needed medication. In response, Dr. Rohana told Mr. Britt that he was in shock from his accident, that ribs take some time to heal, and that he would prescribe him with Ibuprofen.

> In a progress note, Nurse Plummer-Long recorded:
>
> Patient seen in clinic for wound evaluation of old chest tube site on [left] side. Noted 2 cm well approximated edges surgical incision from chest tube site. [No] drainage on exterior of old intact dressing, [no] active drainage noted, [no signs] of infection present. Cleansed area [with] NaCl and left open to air, due to being heavily scabbed. Educated patient not to pick or scratch at scabbed area and to submit health care request slip for any concerns or [signs] of infection, redness, active drainage, warmth, yellow green drainage. Educated patient to [follow up] [with] family MD upon release. Patient verbalizes understanding. [Patient] [complains of] rib pain. Provider notified and given for the following IBU 400 mg PO BID [twice a day] x 3 days, then to receive from commissary. Orders written and placed in JIMS. Educated patient following 3 days of IBU patient would need to order from commissary. Patient verbalizes understanding.

Mr. Britt admits that this progress note gives an accurate account. Accordingly, Dr. Rohana prescribed Mr. Britt with Ibuprofen for three days and instructed him to purchase Ibuprofen from the commissary thereafter.

Mr. Britt agrees that he could have purchased Ibuprofen from the commissary if he wanted, but he chose not to do so.

On November 15, Mr. Britt submitted a second health service request, stating: "I'm under a lot of stress and depression. I can't sleep at all. My mind just runs and runs. I'm having bad dreams when I do sleep. I really believe I need to see someone." Mr. Britt claims that he submitted

the request based on his desire to talk to a mental health professional, and his request was accommodated.

On November 27, Mr. Britt submitted a third health service request. Mr. Britt wrote: "Can I please get a copy of my medical papers that came with me from Wishard Hospital please." According to Mr. Britt, the purpose of this request was to find out what medications his Wishard doctor had prescribed and because he felt like he had been prematurely released from the hospital. One month after being discharged from Wishard, on December 5, 2012, Mr. Britt was moved from the medical cell block to the jail's general population. That same day, Mr. Britt submitted a jail grievance, writing: "I have been moved from a medical dorm, 2Q to 2U. I have several broken ribs, a punctured lung that is still healing. I have a very hard time breathing, and I believe that I should be in a medical dorm so I can be under the doctor's care. I hurt every day 24/7. Can you please help me with my situation[?] Thank you." On December 6, Mr. Britt submitted a health service request, stating: "I have broken ribs, a healing punctured lung, I have a hard time breathing. Why did I get moved out of a medical block 2Q[?] I'm in pain 24/7."

In response to his health service request, on December 7, Mr. Britt was seen by Nurse Thomas Davis, another member of the jail medical staff. Once again, Mr. Britt was provided with Ibuprofen to respond to his complaints of pain, a prescription that was approved by Dr. Rohana. Mr. Britt was charged $15 for his meeting with Nurse Davis, the only time he was ever charged for meeting with medical staff at the jail.

On December 13, Mr. Britt was moved from the second floor to the fourth floor of the jail where Mr. Britt continued to be able to submit health service request forms and to purchase Ibuprofen from the commissary.

6

During his incarceration at Marion County Jail 1, Mr. Britt never met Mr. Tingle, the jail commander, nor did he speak with him. Mr. Britt claims that he sent a letter to Mr. Tingle regarding his medical treatment. However, Mr. Tingle denies ever receiving a letter from Mr. Britt or any knowledge that Mr. Britt was suffering from serious injuries. Mr. Britt has no personal knowledge as to whether Mr. Tingle ever received his alleged letter. To the contrary, Mr. Britt testified at his deposition that Mr. Tingle "probably didn't even get the letter."

On December 15, 2012, Mr. Britt was moved from Marion County Jail 1, to a separate facility, Marion County Jail 2. At that time, Mr. Britt's sores from his hemothorax surgery had already healed. Dr. Rohana is not the doctor at Marion County Jail 2. At Marion County Jail 2, Mr. Britt received a physical and was prescribed with Ibuprofen and a stool softener, the very same medications he was receiving at Marion County Jail 1. Medical staff continued his regimen of Ibuprofen throughout his stay at Marion County Jail 2. Mr. Britt admits that the decision to prescribe him with Ibuprofen by medical staff at the Marion County Jail 2 was based on their own medical judgment.

Mr. Britt is currently incarcerated at the Plainfield Correctional Facility. According to Mr. Britt, "a lot" of his injuries from the vehicle accident have healed. However, Mr. Britt contends that there is damage to his toes, his lungs, and his ribs. His conclusion is based on his own personal opinion, and he admittedly has no medical evidence that any chronic pain or difficulty breathing is the result of any treatment decision by Dr. Rohana.

**Discussion**

Because Mr. Britt was a pretrial detainee, "his deliberate-indifference claim arises under the Fourteenth Amendment's Due Process Clause but is governed by the same standards as a claim

7

for violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Smith v. Sangamon Cnty. Sheriff's Dept.*, 715 F.3d 188, 191 (7th Cir. 2013). "The burden is on [Mr. Britt] to demonstrate that prison officials violated the Eighth Amendment, and that burden is a heavy one." *Pyles v. Fahim,* 771 F.3d 403, 408-09 (7th Cir. 2014). To prevail on his medical claim, Britt must make two showings. First, he must demonstrate that he suffers from an objectively serious medical condition. *Id*. at 409. Second, he must demonstrate that Dr. Rohana and Mr. Tingle knew about his condition and the risk it posed, but disregarded that risk. *Id.* "Something more than negligence or even malpractice is required." *Id.*

The defendants argue that they are entitled to judgment as a matter of law because there is no evidence: (i) that Mr. Britt had a broken right arm or broken toes, (ii) that Dr. Rohana acted inappropriately in providing care to Mr. Britt, (iii) that Mr. Tingle knew of any threat to Mr. Britt's health or safety, or (iv) that either defendant subjectively intended to cause Mr. Britt harm or recklessly ignored Mr. Britt's alleged pain. To the contrary, they argue, the evidence shows that the medical care provided to Mr. Britt at the jail was appropriate.

If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party. *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996). That is the case here. There is no evidence that either of the defendants were deliberately indifferent to Mr. Britt's serious medical needs. The defendants have, in particular, shown that there was no violation of Mr. Britt's federally secured rights associated with the delivery of necessary medical services to Mr. Britt during his confinement at the Marion County Jail. A court examines the totality of an inmate's medical care when determining whether prison officials have been deliberately

8

indifferent to an inmate's serious medical needs. *Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999). The most which is established here is that Mr. Britt has serious and complex medical needs and that the defendants as well as other medical personnel have exercised their professional judgment in the plaintiff's best interests, and well within the bounds of the Constitution, in meeting his medical needs and concerns. The evidentiary record negates the presence of the subjective state of mind required to show deliberate indifference, i.e., that the defendants were "subjectively aware of [Mr. Britt's] serious medical needs and disregarded an excessive risk that a lack of treatment posed to his health or safety." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001).[1] Because of this showing, the defendants are entitled to the entry of judgment in their favor and against the plaintiff. *Celotex Corp.*, 477 U.S. at 322-23 (explaining that when the moving party has met the standard of Rule 56, summary judgment is mandatory). "Summary judgment is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgment must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994), cert. granted 513 U.S. 1071 (1995). That is precisely the situation with respect to the present case, and the defendants' motion for summary judgment must therefore be **granted**.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

_(signature: William T. Lawrence)_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Date: 4/8/15

---

[1] The defendants also assert that Mr. Tingle is entitled to qualified immunity. Because there was no constitutional violation, this argument is unnecessary and shall not be considered further. *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1057–58 (7th Cir.2011).

Distribution:

WENDELL D. BRITT
DOC #161632
PLAINFIELD CORRECTIONAL FACILITY
Inmate Mail/Parcels
727 MOON ROAD
PLAINFIELD, IN 46168

All Electronically Registered Counsel